NOTE: CHANGES MADE BY THE COURT

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESTSIDE HEAD & NECK, a California corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>THE HARTFORD FINANCIAL SERVICES GROUP, INC., a corporation; SENTINEL INSURANCE COMPANY, LTD., a corporation,<br><br>    Defendants. | Case No.: 2:20−cv−06132 JFW (JCx)<br><br>**STATEMENT OF DECISION GRANTING DEFENDANT SENTINEL INSURANCE COMPANY, LTD'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

STATEMENT OF DECISION

# STATEMENT OF DECISION GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c)

On January 26, 2021, Defendant Sentinel Insurance Company, Ltd ("Sentinel" or "Defendant") filed a Motion for Judgment on the Pleadings. (Dkt. No. 29-1.) On February 23, 2021, Westside Head & Neck ("WHN" or "Plaintiff") filed its Opposition. (Dkt. No. 32.) On March 9, 2021, Sentinel filed a Reply in Support of its Motion. (Dkt. No. 33.)

After considering the moving, opposing, and reply papers, and the arguments set forth therein, the Court enters judgment on the pleadings in favor of Sentinel and against WHN. The Court concludes that WHN cannot establish the relief requested as a matter of law and denies WHN's request for leave to amend.

## I.   BACKGROUND

Plaintiff, an otolaryngology practice, seeks to recover for purported business income losses incurred when a majority of its business was "suspended" due to governmental orders "that mandated the closure of non-essential businesses due to the COVID-19 pandemic." (Dkt. No. 1-1 at 6, ("Compl.") ¶ 2.) Sentinel and WHN entered into an insurance policy contract for the period April 16, 2019 through April 16, 2020 and April 16, 2020 through April 16, 2021, known as a "Spectrum Business Owner's Policy" bearing policy number 72 SBA BC1773 (the "Policy"). (*See* Compl. ¶¶ 17, 18.)

The Policy (Dkt. 29-3., Ex. A)[1] provides the following relevant coverages:

**5.  Additional Coverages**

**o. Business Income**

(1) We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of

---

[1] There is no difference in material provisions between the 2019-20 and 2020-21 policies. Therefore, all references are to the 2020-21 policy.

restoration". The suspension must be caused by direct physical loss of or physical damage to property at the "scheduled premises". . . caused by or resulting from a Covered Cause of Loss. (*Id*. at 43.)

**p. Extra Expense**

(1) We will pay reasonable and necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or physical damage to property at the "scheduled premises" . . . caused by or resulting from a Covered Cause of Loss. (*Id*.)

**q.  Civil Authority**

(1) This insurance is extended to apply to the actual loss of Business Income you sustain when access to your "scheduled premises" is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your "scheduled premises". (*Id*. at 44)

The Policy contains a virus exclusion that provides the following:

**i. "Fungi", Wet Rot, Dry Rot, Bacteria And Virus**

We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:

(1) Presence, growth, proliferation, spread or any activity of "fungi", wet rot, dry rot, bacteria or virus.

(2) But if "fungi", wet rot, dry rot, bacteria or virus results in a "specified cause of loss" to Covered Property, we will pay for the loss or damage caused by that "specified cause of loss."

This exclusion does not apply:

>(1) When "fungi", wet or dry rot, bacteria or virus results from fire or lightning; or
>
>(2) To the extent that coverage is provided in the Additional Coverage – Limited Coverage for "Fungi", Wet Rot, Dry Rot, Bacteria and Virus with respect to loss or damage by a cause of loss other than fire or lightning.
>
>This Exclusion applies "whether or not the loss event results in widespread damage or affects a substantial area." (*Id*. at 133)

WHN's Complaint alleges that "on or about March 19, 2020, the Public Health Officer of the State of California issued Executive Order N-33-20, generally mandating that all individuals living in the State of California stay home or at their place of residence but for limited essential outings." (Compl. ¶ 30.) "On or about March 19-21, 2020, the Los Angeles County Department of Public Health issued orders for COVID-19, closing all nonessential businesses and prohibiting gatherings of non-household members." (*Id*. ¶ 31.) In addition to the above Orders, the Complaint also alleges that guidelines of the American Academy of Otolaryngology-Head and Neck Surgery and the Centers for Medicare and Medicaid Services have advised limiting care at this time to time-sensitive and emergent problems. (*Id*. ¶¶ 35, 36.) Plaintiff concedes that the governmental orders were aimed at slowing the spread of the coronavirus. (*See, e.g., id*. ¶ 27) (order issued "[b]ecause of the widespread existence of the Coronavirus"); (*id*. ¶ 38) (orders issued because "Coronavirus is so physically widespread in the community"). In essence, without the virus, the governmental orders would not exist.

Plaintiff alleges that the government orders "restrict the movement of WHN's physicians, staff and patients and limited WHN to seeing only time-sensitive and emergency cases." (*Id*. ¶ 33.) WHN's allergy testing and treatment facility allegedly had to be completely shut down because of the risks associated

3
STATEMENT OF DECISION

with the coronavirus. The shutdowns allegedly disrupted WHN's practice and substantially reduced its business income. (*Id.* ¶ 33.) Nowhere in the Complaint does WHN include allegations of any direct physical loss of or physical damage to its premises.

WHN made a claim to Sentinel for its purported business income loss, which Sentinel denied on March 19, 2020. (*Id.* ¶ 39.) WHN filed its Complaint on May 12, 2020 and Sentinel removed to this Court on July 9, 2020. The Complaint alleges five causes of action for breach of contract, breach of the implied duty of good faith and fair dealing, fraud, unfair business practices, and for declaratory relief against Sentinel.

Sentinel has moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) on the grounds that WHN's Complaint fails to allege a plausible claim upon which any relief can be granted.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), a party "may move for judgment on the pleadings" after the pleadings are closed "but early enough not to delay trial." Fed. R. Civ. P. 12(c). A post-answer motion for judgment on the pleadings under Rule 12(c) is "functionally identical" to a pre-answer motion to dismiss under Rule 12(b)(6), and "'the same standard of review' applies for both a Rule 12(b)(6) and Rule 12(c) motion." *Diamond v. Corizon Health, Inc.*, No. 16-cv-03534-JSC, 2016 WL 7034036, at *2 (N.D. Cal. Dec. 2, 2016) (*quoting Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)).

To survive a motion for judgment on the pleadings, a complaint must therefore "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (*citing* *Twombly*, 550 U.S. at 556). A pleading that offers only "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (*quoting* *Twombly*, 550 U.S. at 555).

In considering this motion, the Court may consider the certified copy of the Policy filed concurrently with Sentinel's moving papers because it is relied upon, and incorporated by reference in WHN's Complaint (Compl. ¶¶ 7, 17-23). *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (a court faced with a motion challenging the sufficiency of the pleadings "must consider the complaint in its entirety, as well as . . .documents incorporated into the complaint by reference"); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (the "incorporation by reference" doctrine permits courts to consider documents on which "the plaintiff's claim depends" and documents "whose contents are alleged in a complaint" without converting a motion to dismiss to a motion for summary judgment (citations omitted)); *see also Biltmore Assocs., LLC v. Twin City Fire Ins. Co.*, 572 F.3d 663, 665 & n.1 (9th Cir. 2009) (court appropriately considered copies of insurance policies that an insurer attached to its motion to dismiss).

## III.   ANALYSIS

Sentinel argues that the Complaint should be dismissed for four reasons: (1) the virus exclusion precludes coverage under the Policy; (2) WHN has not alleged any loss or damage that could plausibly be covered by the Policy's Limited Coverage for "Fungi," Wet or Dry Rot, Bacteria or Virus; (3) WHN does not plausibly allege that it suffered "direct physical loss of or damage to property" as is required under the Policy; and (4) WHN cannot invoke coverage for civil authority because it has not alleged facts showing that property "in the immediate area" of the insured premises experienced "direct physical loss," which caused "access to [the] 'scheduled premises' [to be] specifically prohibited by order of a civil

authority". Further, Plaintiff has not alleged a plausible link between public health orders that restricted the activity of all non-essential businesses and any loss of or damage to property in the immediate area of its premises.

### A. The Virus Exclusion Precludes Coverage

The Court concludes that WHN cannot state a claim for relief under the Policy because the Policy precludes the insured from recovering for loss or damage that is caused directly or indirectly by the presence, growth, proliferation, or spread of a virus. (*See* ECF No. 29-3 at 133.) And it "applies whether or not the loss event results in widespread damage or affects a substantial area." *Id*. Under California Law, policy terms must be interpreted by their "'ordinary and popular sense." *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 822 (1990). "When an insurance policy contains clear and unequivocal provisions, the only reasonable expectation to be found is that afforded by the plain language of the terms in the contract." *Travelers Cas. & Sur. Co. v. Emps. Ins. of Wausau*, 130 Cal. App. 4th 99, 115 (2005).

Confronted with the same or similar virus exclusion provisions, numerous courts in California have determined that these provisions exclude coverage for business losses related to COVID-19. *See, e.g.*, *Founder Inst. Inc. v. Hartford Fire Ins. Co.*, No. 20-CV-04466-VC, 2020 WL 6268539, at *1 (N.D. Cal. Oct. 22, 2020); *see also Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.,* No. 20-CV-04434 JSC, 2020 WL 7342687, at *2 (N.D. Cal. Dec. 14, 2020) (*Franklin II*) (dismissing with prejudice after initially dismissing with leave to amend); *BA LAX, LLC v. Hartford Fire Ins. Co.*, No. 2:20-cv-06344-SVW-JPR, 2021 WL 144248, at *4 (C.D. Cal. Jan. 12, 2021); *Colgan v. Sentinel Ins. Co., Ltd.*, Case No. 20-cv-04780-HSG, 2021 WL 472964, at *4 (N.D. Cal., Jan 26, 2021) (finding Sentinel's Virus Exclusion applies.)[2]

---

[2] Courts nationwide are in accord. *Nahmad v. Hartford Cas. Ins. Co.*, No. 1:20-cv-22833-BLOOM/Louis, 2020 WL 6392841, at *9-10 (S.D. Fla. Nov. 2, 2020);

Plaintiff's argument that the Virus Exclusion does not apply because the virus was not present on its premises and that the Policy could have referred explicitly to "pandemics" is unavailing. To read the exclusion as applying solely to "presence" would render all other terms in the exclusion surplusage, which California courts do not allow. *See Stamm Theatres, Inc. v. Hartford Cas. Ins. Co.*, 93 Cal. App. 4th 531, 538 (2001) ("We must also interpret these terms 'in context' [citation], and give effect 'to every part' of the policy with 'each clause helping to interpret the other.'"); *United Farmers Agents Assn., Inc. v. Farmers Grp., Inc.*, 32 Cal. App. 5th 478 (2019). And the Virus Exclusion makes clear that it applies to large-scale virus spread like a global pandemic. Courts in California and nationwide have already rejected these arguments. *See*, *Franklin II,* 2020 WL 7342687, at *3; *see also Phan v. Nationwide Gen. Ins. Co.*, 2021 WL 609845, at *7 (C.D. Cal. Feb. 1, 2021); *Zagafen Bala, LLC*, 2021 WL 131657, at *7 ("That the virus may or may not be present at the insured properties is immaterial …"); *LJ New Haven LLC v. AmGUARD Ins. Co.*, No. 20-cv-00751, 2020 WL 7495622, at *6 (D. Conn. Dec. 21, 2020) (declining "to import into the virus exclusion an 'onsite' or 'contamination' restriction that appears nowhere in the terms of the policy"); *Boxed Foods Co., LLC v. California Capital Ins. Co.*, No. 20-cv-04571-

---

*Natty Greene's Brewing Co., LLC v. Travelers Cas. Ins. Co. of Am.*, No. 1:20-CV-437, 2020 WL 7024882, at *2-4 (M.D.N.C. Nov. 30, 2020); *Wilson v. Hartford Cas. Ins. Co.*, No. CV 20-3384, 2020 WL 5820800, at *7, *9 (E.D. Pa. Sept. 30, 2020), *appeal filed*, No. 20-3124 (3d Cir. Oct. 20, 2020); *ATCM Optical, Inc. v. Twin City Fire Ins. Co.*, No. 20-4238, 2021 WL 131282, at *6-8 (E.D. Pa. Jan. 14, 2021); *Moody v. Hartford Fin. Serv. Group, Inc.*, No. 20-2856, 2021 WL 135897, at *9-11 (E.D. Pa. Jan. 14, 2021); *TAQ Willow Grove, LLC v. Twin City Fire Ins. Co.*, No. 20-3863, 2021 WL 131555, at *7-9 (E.D. Pa. Jan. 14, 2021); *Ultimate Hearing Solutions II, LLC v. Twin City Fire Ins. Co.*, No. 20-2401, 2021 WL 131556, at *10 (E.D. Pa. Jan. 14, 2021); *Zagafen Bala, LLC v. Twin City Fire Ins. Co.*, No. 20-3033, 2021 WL 131657, *7-9 (E.D. Pa. Jan. 14, 2021).

CRB, 2020 WL 6271021, at *5 (policy did not need to include the word "pandemic" or "specify the magnitude of an excluded cause of loss" to exclude COVID-19-related business loss); *Nahmad v. Hartford Cas. Ins. Co.*, 2020 WL 6392841, at *10 (pandemic losses excluded by this Virus Exclusion); *Diesel Barbershop, LLC v. State Farm Lloyds*, No. 20-cv-461, 2020 WL 4724305, at *6 (W.D. Tex. Aug. 13, 2020); *W. Coast Hotel Mgmt.*, No. 20-cv-05663, 2020 WL 6440037, at *6 (C.D. Cal. Oct. 27, 2020).

### 1. The Virus Caused Plaintiff's Alleged Loss

WHN's argument that the cause of its loss is not the virus but instead the governmental orders aimed at slowing its spread is also unavailing. Plaintiff's pleadings make clear that that the governmental orders were aimed at slowing the spread of the virus. (*See, e.g.*, Compl. ¶ 27) (order issued "[b]ecause of the widespread existence of the Coronavirus"); (*id.* ¶ 38) (orders issued because "Coronavirus is so physically widespread in the community"). Without the virus, the governmental orders would not exist.  Government orders are not a "Covered Cause of Loss" (as that term is defined and used in the Policy), and, even if they were, they were not the efficient proximate cause of Plaintiff's losses. The Policy defines Covered Cause of Loss as a "risks of direct physical loss or direct physical damage" that is not excluded or limited by the Policy. (ECF No. 29-3 at 35.) Government orders aimed at slowing the spread of a virus do not pose a risk of physical loss or damage. This Court is persuaded by the courts in this district that have found in accord. *10E, LLC v. Travelers Indem. Co. of Conn.*, 2020 WL 6749361, at *2 (C.D. Cal. Nov. 13, 2020), *appeal filed*, No. 20-56206 (9th Cir. Nov. 17, 2020); *see also, e.g. BA LAX, LLC*, 2021 WL 144248, at *4 ("public health measures intended to mitigate the spread of COVID-19 are directly or indirectly caused by the activity of a virus").

## 2. The Limited Coverage is not Illusory

Plaintiff has not met its burden of showing that its business losses are covered under the Policy's Limited Coverage provision. Plaintiff does not allege that the virus was caused by any specified cause of loss, only that the requirement is impossible to satisfy and thus "renders the Limited Virus Coverage illusory."

Plaintiff is wrong that the Limited Coverage is impossible to trigger. As a threshold matter, the Limited Coverage applies to multiple perils – fungi, wet rot, dry rot, bacteria *and* virus. And there are multiple specified causes of loss. There is no requirement that each peril potentially be the result of each and every specified cause of loss. Nor is there any requirement that every specified cause of loss must result in a peril set out in the additional Limited Coverage. *Ultimate Hearing Sols. II, LLC*, 2021 WL 131556, at * 9. And, in fact, those perils have triggered the coverage. *See, e.g., WPB No. 1, LLC v. Valley Forge Ins. Co.*, No. 05cv2027, 2007 WL 9702161, at *2 (S.D. Cal. Mar. 27, 2007) (applying limited coverage to mold). There is no reason to believe the same could not be true as to Plaintiff here.

Moreover, Plaintiff's assertion that a virus could never be caused directly or indirectly by any of the specified causes of loss is not plausible. In *Curtis O. Griess & Sons, Inc. v. Farm Bureau Ins. Co. of Neb.*, 528 N.W.2d 329 (Neb. 1995), a windstorm (a specified cause of loss) caused insured property to become infected with the pseudorabies virus. *Id*. at 333. Plaintiff claims this is irrelevant because it does not explain how "WHN would be covered for a virus under this endorsement." But the fact that a virus could harm property in *Curtis O. Griess* means a virus could also harm property here too. This Court is persuaded by the *Franklin* Court's rejection of this this exact argument: "even without Curtis's illustration that it is not factually impossible for a virus to be caused by a 'specified cause of loss,' an insurance policy provision is only illusory where it results in a 'complete lack of any policy coverage.'" *Franklin II*, 2020 WL 7342687, at *4-5.

### B.   WHN Alleges No Direct Physical Loss of or Damage to Property

Even if the Virus Exclusion were not applicable, WHN cannot pursue its claims because direct physical loss of or damage to property is required for coverage under any provision of the Policy. WHN has failed to allege any direct physical loss. Rather, Plaintiff alleges that orders issued by state and local governments in March 2020 mandated that Plaintiff limited some of its operations to "emergency procedures" (Compl. ¶¶ 33, 37) and suspended other practices. (*Id.*) Plaintiff's allegations are insufficient to state a claim for coverage under the Policy.

Temporary inability to use commercial premises is not direct physical loss of property. Under California law, "[p]hysical loss or damage occurs only when property undergoes a 'distinct, demonstrable, physical alteration.'" *See e.g.*, *10E, LLC*, 2020 WL 5359653, at *4 (quoting *MRI Healthcare Ctr. Of Glendale, Inc. v. State Farm Gen. Ins. Co.,* 187 Cal. App. 4th 766, 779 (2010)). This standard is "met when an item of tangible property has been 'physically altered' by perils such as fire or water," but it is not satisfied "in instances when the structure of the property itself is unchanged to the naked eye and the insured claims its usefulness for its normal purposes has been destroyed or reduced." *MRI Healthcare,* 187 Cal. App. 4th at 778-79; *see also Ward General Ins. Servs., Inc. v. Employers Fire Ins. Co.*, 114 Cal. App. 4th 548 (2003) (holding that a loss of valuable electronic data did not qualify as "direct physical loss or damage" without any physical alteration to the storage media.); *see also Meridian Textiles, Inc. v. Indem. Ins. Co. of N. Am.*, No. CV 06-4766 CAS, 2008 WL 3009889, at *6 (C.D. Cal. Mar. 20, 2008) (insured required to show "some tangible change in the yarn" or "some detectable physical change"). "[D]etrimental economic impact" alone does not constitute direct physical loss. *MRI Healthcare*, 187 Cal. App. 4th at 779; *see also Doyle v. Fireman's Fund Ins. Co.*, 21 Cal. App. 5th 33, 39 (2018) (diminution in value of

wine collection after purchase of counterfeit wine was not property damage); *State Farm Fire & Cas. Co. v. Superior Court*, 215 Cal. App. 3d 1435, 1445 (1989) (neither diminution in value nor the cost of repair or replacement is active physical force; it is measure of the loss or damage). Consistent with these principles, several courts have dismissed nearly identical cases. *See, e.g. 10E, LLC*, 2020 WL 5359653, at *4-5; *Plan Check Downtown III, LLC v. AmGuard Ins. Co.,* No. CV 20-6954-GW-SKX, 485 F. Supp.3d 1225, at 1228-32 (C.D. Cal. 2020), appeal filed, No. 20-56020 (9th Cir. Oct. 2, 2020); *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, No. 20-CV-907-CAB-BLM, 2020 WL 5500221, at *4 (S.D. Cal. Sept. 11, 2020).

Despite the established California case law discussed above, WHN argues that a "property's loss of use as intended is sufficient to constitute 'physical loss of property'" under the Policy. Like the insured in *10E, LLC*, 2020 WL 5359653, at *4, WHN tries to distinguish "physical loss of" property and "damage to" property insisting that "loss" encompasses the impaired use of property. As such, WHN argues that the Government Orders restricting the use of WHN's property resulted in "physical loss of" WHN's property under the Policy. In support, WHN principally relies on *Henderson Road Restaurant Systems, Inc. v. Zurich American Insurance Co.,* No. 20-cv-1239, 2021 WL 168422, at *3, *13 (N.D. Ohio Jan. 19, 2021). *Henderson* is inapposite.  The policy in *Henderson* differed in two material ways.  First, the definition of "covered cause of loss" under the policy in *Henderson* did not include a direct physical loss requirement.  Rather, the policy defined "covered cause of loss" as a "fortuitous cause or event, not otherwise excluded" and the state emergency orders could constitute a "fortuitous cause or event." *Id*.  Second, the *Henderson* policy lacked a "period of restoration" definition that included the repair, rebuilding, and/or replacement of property – a

key definition California courts have relied upon to support their conclusion that a physical alteration to property is required to demonstrate direct physical loss.

WHN here has not experienced any loss of its property. All of Plaintiff's "Covered Property" remains intact, in the same condition as before its alleged loss.[3]

### C. WHN Has Failed to Allege Facts Demonstrating Its Entitlement to Civil Authority Coverage

WHN has not plausibly alleged a basis for civil authority coverage. The Civil Authority coverage pays for Plaintiff's "actual loss of Business Income" during a 30-day period "when access to [the] 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of [the] 'scheduled premises'," i.e., direct physical loss to property in the immediate area. (Dkt. No. 29-3 at 44.) The Court concludes that the allegations in the Complaint do not satisfy these requirements. As discussed above, Plaintiff has not alleged "direct physical loss" to the insured property or property in the immediate area of the insured property.

Second, Plaintiff has not and could not allege a plausible nexus between (i) direct physical loss of or damage to property in the immediate area of its properties, and (ii) the generally applicable orders issued by state and local authorities that restricted the activity of *all* "non-essential" businesses. Plaintiff has not pointed to anything in the March 2020 orders that required non-essential businesses to close that could plausibly support the conclusion that these orders

---

[3] That "direct physical loss" requires a tangible, physical alteration of property (and not just loss of use of the premises) is also reinforced by other terms of Plaintiff's policy. As an initial matter, coverage for Business Income and Extra Expense is available only during a "period of restoration" (Dkt. No. 29-3 at 43), which begins on the date on which the triggering physical loss or damage occurs and ends when the property "should be repaired, rebuilt or replaced with reasonable speed and similar quality." (Dkt. No 29-3 at 45.)

were issued as the "direct result of" a Covered Cause of Loss to property in the immediate area of Plaintiff's premises. *See 10E*, 2020 WL 5359653, at *6 ("[T]he FAC does not . . . articulate any facts connecting the alleged property damage to restrictions on in-person dining."). Nor could it, as it is clear from the face of these orders that they were entered to prevent the spread of the coronavirus rather than as the result of any existing "loss" or "damage" to surrounding property.[4] Courts routinely reject civil authority claims that fail to plausibly connect the order in question to loss or damage in the vicinity of the covered property. *See, e.g., Mudpie*, 2020 WL 5525171, at *7; *Mortar & Pestle v. Atain Specialty Ins. Co.*, 2020 WL 7495180, at *5 (Dec. 12, 2020); *Syufy Enters. v. Home Ins. Co. of Ind.*, No. 94-0756 FMS, 1995 WL 129229, at *2 (N.D. Cal. Mar. 21, 1995) (government curfew was imposed "to *prevent* 'potential' looting, rioting, and resulting property damage," not "because of damage to adjacent property").

Plaintiff argues that the governmental orders were issued as a result of a risk of physical loss or physical damage to property. As a threshold matter, the order Plaintiff relies on pertains to the City of Los Angeles and had no applicability to Plaintiff (whose insured property is allegedly located in Culver City and Santa Monica). (Compl. ¶¶ 13-16; Dkt. No. 1-1 at 29.) Further, even if applicable, the Los Angeles order does not identify any specific property in Plaintiff's immediate area that experienced a risk of direct physical loss or damage. *Pappy's*, 2020 WL

---

[4] *See* Dkt No. 1-1 at 97, Cal. Exec. Order N-33-20 ("Our goal is simple, we want to bend the curve, and disrupt the spread of the virus."); *see also id* at 101, Mar. 19, 2020 City of Los Angeles Order (". . . the City must adopt additional emergency measures to further limit the spread of COVID-19"); *Id*. at 113 (To reduce the risk of spread and to preserve PPE, it is recommended that all non-essential dental exams and procedures be postponed until further notice"); *Id*. at 119 ("This will help providers to focus on addressing more urgent cases and preserve resources needed for the COVID-19 response"); *Id*. at 121 ("To help combat the spread of the COVID-19 virus, various federal, state, and local government officials have issued emergency public health orders and 'shelter-in-place' directives.")

5500221, at *6.  In a decision that examined this exact coverage provision, a court in the Northern District of California observed that "[t]o the extent that the Closure Orders even mention physical property, they only recognize that surfaces may become contaminated and need to be cleaned," which "does not constitute physical damage." *Protégé Rest. Partners LLC v. Sentinel Ins. Co., Ltd.,* No. 20-cv-03674-BLF, 2021 WL 428653, at *6 (N.D. Cal. Feb. 8, 2021).

Finally, Plaintiff has failed to show "access" to its property was "specifically prohibited by order of a civil authority." The court in *Pappy's* held that insured barber shops failed to allege that a government order prohibited access to premises, and noted the "distinction between [a] place of business (i.e., the physical premises where [insureds] operate their business), and the business itself." *Pappy's*, 2020 WL 5500221, at *1 & *6.  Other courts have reached similar conclusions. *See Nahmad*, 2020 WL 6392841, at *9 (government orders suspending or limiting dental practice did not constitute specific prohibition of access to dentist's office); *1210 McGavock St. Hosp. Partners, LLC v. Admiral Indemnity Co.*, No. 20-cv-694,  2020 WL 7641184, at *10 ("The most natural reading of 'access,' in this context, is physical access, not simply being closed to the public. The plaintiff does not allege that it was ever physically unable to access the restaurant.").  Indeed, WHN concedes that the stay at home orders allowed its physicians to perform emergency and time-sensitive procedures. (*see, e.g.,* Compl. ¶ 33.) WHN continues to operate minimally and has failed to allege that access to its premises was prohibited by government order. *See, e.g., Sandy Point Dental, PC v. Cincinnati Ins. Co.*, No. 20 CV 2160, 2020 WL 5630465, at *3 (N.D. Ill. Sept. 21, 2020); *Kessler Dental Assocs., P.C. v. Dentists Ins. Co.*, No. 2:20-cv-03376-JDW, 2020 WL 7181057, at *4 (E.D. Pa. Dec. 7, 2020).

## IV. CONCLUSION

For the foregoing reasons, Sentinel's motion for judgment on the pleadings is **GRANTED**.

Although the Court recognizes that this Circuit has a liberal policy favoring amendments and that leave to amend should be freely granted, the Court is not required to grant leave to amend if the Court determines that permitting a plaintiff to amend would be an exercise in futility. *See, e.g.*, *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile."). WHN fails to indicate that it can allege any additional facts that would support coverage under the Policy. Accordingly, because it would be an exercise in futility, the Court denies WHN's leave to amend. The Complaint is **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

DATED: March 19, 2021

　　　　　　　　　　　　　　　　　　／s／ John F. Walter
　　　　　　　　　　　　　　　　　　Hon. John F. Walter
　　　　　　　　　　　　　　　　　　United States District Court Judge